**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

HENRY E. SIMMONS, II                                                                                    PLAINTIFF

vs.                                                                          Civil Action No. 3:09-cv-075 HTW-LRA

UPTON TIRE PROS, INC.                                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before this court is defendant Upton Tire Pros, Inc.'s motion for summary judgment filed pursuant to Rules 56(b) and (c)[1] of the Federal Rules of Civil Procedure [Docket No. 18] and its motion in limine [Docket No. 26]. On November 25, 2008, plaintiff Henry E. Simmons, II ("Simmons" or "plaintiff") filed a lawsuit in this federal

---

[1] Prior to the 2010 amendments, Federal Rules of Civil Procedure 56(a), (b) and (c) provided:

Rule 56(a) read:

A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

Rule 56(b) read, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure read, in pertinent part, the following:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

forum, the United States District Court for the Southern District of Mississippi, against his former employer, Upton Tire Pros, Inc., ("Upton").  Plaintiff, whose job position with Upton was terminated against his will, alleges that he was the victim of racial discrimination in violation of Title 42 U.S.C. § 2000e, Title VII,[2] and Title 42 U.S.C. § 1981.[3]  An African American, plaintiff alleges that during his employment at Upton he was subjected to a racially hostile work environment and later terminated from his employment on reasons manufactured by racial animus.  Plaintiff opposes defendant's

---

[2] Title 42 U.S.C. § 2000e-2 states:

a) Employer practices

It shall be an unlawful employment practice for an employer--
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such  individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

[3] Title 42 U.S.C. § 1981 states:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and  conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law.

motion for summary judgment.

As authorized by Title 28 U.S.C. § 1331,[4] this court has subject matter jurisdiction over this dispute to be resolved by federal law, because a federal question is raised by plaintiff's reliance upon Title VII.  This court may hear the remaining state law claims – intentional infliction and/or negligent infliction of emotional distress and punitive damages – under this court's supplemental jurisdiction,[5] while applying the substantive law of Mississippi.  *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Earlier, this court afforded the parties the opportunity to appear and present oral arguments, which were helpful.  Both parties principally relied upon Upton documents and the deposition of plaintiff.  While they emphasize different aspects of the applicable law, both acknowledge the same embracing jurisprudence.  Now prepared to rule on defendant's summary judgment motion, this court finds it must deny it for the reasons set out below.

## I. Background

In June 2006, Simmons began working for defendant Upton as a tire/service technician in Jackson, Mississippi.  After approximately two months with the company,

---

[4] Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

[5] Title 28 U.S.C. § 1367(a) provides that : "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. . . . "

plaintiff transferred to the Brandon, Mississippi, store and then to the Upton store in Madison, Mississippi, two weeks later. After approximately eleven (11) months, plaintiff resigned from this employment with Upton on May 3, 2006, to take a higher paying job. Upton coaxed plaintiff into returning to its employment in February 2007, in plaintiff's old job by offering plaintiff an increase in salary over what he was then earning in his current job.

According to plaintiff, his first term of employment with Upton was without any adverse incidents. He left the employment simply to enjoy a higher pay with another business. He experienced no degrading or humiliating work conditions the first time around at Upton. His second period of employment with Upton was vastly different, says plaintiff.

Plaintiff alleges that towards the end of 2007, George Bennett, plaintiff's supervisor, began creating a racially hostile work environment. Bennett, accuses plaintiff, used the store's intercom to direct derogatory comments aimed only at the black employees. When black employees would congregate, says plaintiff, Bennett would shout over the intercom, "[g]et to work you bunch of monkeys!" Sometimes, adds plaintiff, Bennett would further abuse them by exclaiming, "[g]et to work you fucking monkeys." Bennett spewed these racially-intended barbs to the black employees on three or four different occasions, says plaintiff.[6]

Plaintiff asserts that after hearing these comments, Jay Woodruff, another Upton

---

[6] The plaintiff's charge of discrimination filed with the EEOC indicates that the alleged discrimination took place on one specific date - January 28, 2008. Plaintiff asserted at his deposition and during oral argument that the comments complained of *supra* were made three or four times.

4

employee, went to the owner to complain and make sure no further harassment occurred against black employees.  Michael L. Upton, the owner, however, called Jay Woodruff a troublemaker and threatened to move him to another store, alleges plaintiff.  As a result, plaintiff asserts that he, then, decided to forego informing the owner of the harassment for fear of also being labeled a troublemaker and in danger of transfer.

  Plaintiff did not maintain silence on the matter entirely.  He discussed the alleged insults with various co-workers, namely "Peyton, Macy, another employee, Jay Woodruff, Seneca, Mike, Henry Campbell."  Plaintiff's Deposition, p. 47.  They, too, according to plaintiff, felt stung by the aired scorn-intended commands.

  Then, on January 28, 2008, Upton fired plaintiff, without warning.  Plaintiff says he had just clocked in that morning when he was summoned to George Bennett's office and told the unexpected news:  he was being let go for poor performance.  Later, says plaintiff, when he applied for unemployment, Upton expanded its reason to include others, others plaintiff rejects as untruthful.

  Plaintiff contends that he was replaced by a Daniel Coulter, a white male.  Plaintiff says that if his work performance and absenteeism were poor, then Coulter's was poorer.  Only race discrimination, reasons plaintiff, explains Upton's conduct, conduct supporting George Bennett's blatant pollution of Upton's work environ with racially derogatory commands and conduct seeking to justify plaintiff's termination on flimsy bases.

  Upton draws for this court a different picture, one colored by argued facts that seek to depict a race-neutral reason for Upton's actions.  Why did Upton discharge plaintiff?  Because, says Upton, plaintiff missed approximately 20 days of work during

5

his second term of employment when he was rehired in February 2007. In addition, says Upton, plaintiff altered the date of a doctor's excuse given to him by his doctor before giving it to his supervisor at Upton. Add to all this, plaintiff's poor work habits. So, concludes Upton, due to plaintiff's excessive absenteeism, poor work habits and the alteration of the doctor's note, Upton terminated plaintiff's employment with Upton on January 28, 2008.

As for the racially insensitive commands over its intercom, Upton says plaintiff has no supporting witnesses. Even if he produces proof to evidence one intemperate comment, as he alleged in his charge submitted to the Equal Employment Opportunity Commission (EEOC), one such statement falls into the category of inactionable "stray comment," not intentional discrimination constituting hostile work environment.

On February 4, 2008, plaintiff filed a charge of discrimination with the EEOC, alleging that he had been subjected to racial discrimination on January 28, 2008. He charged that: (1) a white male who previously worked for the company and whose performance was not comparable to plaintiff's was hired to replace him and (2) plaintiff was subjected to a racially hostile work environment. Plaintiff affirmed under oath that the information *supra* was correct. The EEOC issued plaintiff a letter advising him of his right to sue on September 2, 2008.

Plaintiff filed the present action before this court on November 25, 2008, alleging that the defendant's actions constitute intentional discrimination on the basis of race in violation of Title 42 U.S.C. § 2000e, Title VII and Title 42 U.S.C. § 1981. In addition, plaintiff avers that defendant intentionally and/or negligently inflicted emotional distress upon him. Plaintiff also prays for punitive damages, all costs, disbursements, pre-

6

judgment interest, post-judgment interest, expert witness fees and reasonable attorney's fees.

## II. Legal Standard

### A. Summary Judgment

The court should grant a motion for summary judgment only if "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). A fact is material if "it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To determine whether there is a genuine dispute as to any material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner,* 476 F.3d at 343 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The court must make all reasonable inferences in favor of the non-moving party, *Reeves*, 530 U.S. at 150; "however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

## III. Arguments

### A. Race Discrimination

To prove a *prima facie* case of race discrimination, plaintiff must show: 1)

membership in a protected class; 2) that he was qualified for the job; 3) that he was subjected to an adverse employment decision; and 4) that he was treated differently than similarly situated white employees or replaced by a white employee. *Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.507, 512-13 (5th Cir. 2001); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). Plaintiff argues that Upton's only true objection is to his ability to meet the burden of the fourth prong *supra,* that he was treated differently than whites or replaced by a white employee. Plaintiff alleges, however, that he was replaced by a white male, Daniel Coulter, and as a result, argues plaintiff, this is ample evidence of his ability to show a *prima facie* case of race discrimination.

Upton argues contrariwise that plaintiff cannot and did not identify who actually replaced him. Plaintiff's complaint, says Upton, alleges that he was replaced by *Daniel Cartwright*; however, during plaintiff's deposition, says defendant, plaintiff admitted that he was not sure if there was a person by the name Daniel Cartwright. Defendant contends that the first person hired in the same job position that plaintiff held after he was terminated was Shaddrick Cox, an African-American. Accordingly, says defendant, plaintiff cannot show that he was replaced by a white employee and cannot establish a *prima facie* case of race discrimination based on his termination.

In addition, defendant stresses that it terminated plaintiff for a legitimate non-discriminatory reason. This reason, poor work performance, as shown by plaintiff's excessive absenteeism and altered doctor's excuse which plaintiff himself concedes occurred, fully supports its decision, says Upton.

### B. Hostile Work Environment

To prove a hostile work environment claim, a plaintiff must show that: 1) he belongs to a protected group; 2) he was subjected to unwelcome harassment; 3) the harassment was based on a protected characteristic; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&N Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

The plaintiff argues that his race-based hostile work environment claim should survive summary judgment because defendant used racially derogative epithets. Specifically, plaintiff asserts that his supervisor used the store's intercom to direct only black employees to get back to work, shouting orders of "[g]et to work you bunch of monkeys" or "[g]et to work you fucking monkeys" on three or four different occasions. *Supra*.

Defendant disputes the facts offered by plaintiff and argues that plaintiff's claim of hostile work environment should fail as a matter of law. In its defense, defendant responds that the plaintiff's initial EEOC charge indicates only one specific instance of a racially derogative epithet used - occurring on January 28, 2008. A single comment, even of this nature, alone, says defendant, cannot support a claim of discrimination under Title VII. *See Boyd v. State Farm Insurance* Co., 158 F.3d 326, 329 (5th Cir. 1998)(describing an instance in which a white employer called a black employee "Buckwheat," the court stated "[t]he district court properly categorized this isolated utterance as a stray remark from which no reasonable fact-finder could infer race

9

discrimination."); *Lowery v. Univ. of Houston Clear Lake*, 82 F. Supp.2d 689, 701 (S.D. TX. 2000).

Defendant also directs the court's eye towards *Alvondus V. "Jay" Woodruff vs. Upton Tire Pros, Inc.*, Civil Action No. 3:09-CV-072-TSL-JCS, a memorandum opinion and order issued by Judge Tom S. Lee of this court on January 21, 2010, granting Upton Tire Pros, Inc.'s motion for summary judgment. In *Woodruff*, plaintiff complained of only a single instance of an allegedly racial comment in his deposition. The court in *Woodruff* concluded that plaintiff (Woodruff) could not succeed on his claim because it was an isolated utterance insufficient to establish proof of a hostile work environment. *Id*. at 3.

The alleged facts before this court are distinguishable from *Woodruff*. In the instant case, plaintiff said in his deposition, in his response to defendant's motion for summary judgment and during oral argument that the comments complained of *supra* were made three or four times.

### IV. Analysis

Plaintiff's claims must be resolved by a jury. The material facts are in dispute. *See Anderson,* 477 U.S. at 248-249. *See McArdle v. Dell Products, L.P.*, 293 Fed.Appx. 331, 337 (5th Cir. 2008).

We begin with plaintiff's termination. The defendant emphasizes plaintiff's absenteeism on at least twenty (20) occasions. Plaintiff agrees he missed work approximately that many non-consecutive times during his second employment with defendant but he testified in his deposition that he called in beforehand, was seldom

late and always presented a doctor's excuse when asked for one.

Plaintiff contends that his white comparator, Daniel Coulter, had worse performance issues. Plaintiff's testimony about this Daniel Coulter certainly leaves ajar the door for cross-examination, such as why plaintiff was slow to provide his name, and when Coulter left defendant's employment. Still, these are matters for hard cross-examination questions at trial.

Defendant next calls attention to the doctor's excuse that plaintiff altered. According to plaintiff, he admitted to such in October, 2007. He was not fired until January, 2008. Further, he says he explained to Upton that he made the change "[b]ecause [he] didn't go to the doctor on the 26th. [He] was there on the 28th." Plaintiff's Deposition, p. 27.

The racially hostile work environment claim, too, must go to trial. Upton, says plaintiff, has no witnesses to the comments allegedly aired over the intercom. Plaintiff says he does, and named these potential witnesses in his deposition.

Defendant characterizes the matter as a "stray" utterance. Plaintiff says that one utterance may fall into the stray category, but not multiple expletive-laden insults voiced over a period of weeks. Isolated or minor incidents are indeed insufficient, and although courts have refused to apply a formula for the number of incidents required over a certain time period to constitute harassment, generally speaking, the more acts of racial insensitivity in a relatively short period, the more likely the conduct constitutes harassment. *Walker v. Thompson*, 214 F.3d 615 (5th Cir. 2000); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 795 (8th Cir. 2004); *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2nd Cir. 2004). Where, however, particular invidious racial epithets or

symbols are used, fewer incidents may be required to establish harassment. *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993); *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1510-11 (11th Cir. 1989); *Williams v. New York City Hous. Auth.*, 154 F.Supp.2d 820, 824 (S.D.N.Y. 2001).

Defendant challenges whether the alleged racial characterization interfered with plaintiff's work. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998)(stating, "Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain the latter must be severe or pervasive.") Plaintiff testified that he feared he might be transferred if he mentioned the matter again to management, that he complained to other blacks in the workplace, as they to him, and that he reached a different conclusion about George Bennett's character. African Americans at the workplace, says plaintiff, were subjected to greater scrutiny and prone to be discharged for mistakes whites were free to make.

Defendant does not deny that the use of the term "monkey" and other similar words have been part of actionable racial harassment claims across the country. *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 911 (8th Cir. 2006); *Jeffries v. Metro-Mark, Inc.*, 45 F.3d 258, 260 (8th Cir. 1995); *Webb v. Worldwide Flight Serv.*, 407 F.3d 1192, 1193 (11th Cir. 2005); *Daniels v. Pipefitters Ass'n Local Union No. 597*, 945 F.2d 906, 910 (7th Cir. 1991); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001); *Morgan v. McDonough*, 540 F.2d 527, 531 (1st Cir. 1976); *Walker v. SBC Services, Inc.*, 375 F.Supp.2d 524 (N.D. Tex. 2005); *Colbert v. Infiniti Broadcasting*

*Corp.*, 423 F.Supp.2d 575 (N.D. Tex. 2005).

As earlier stated, plaintiff's allegations that he was a victim of wrongful termination due to racial animus and that he was subjected to a racially hostile work environment must go to trial. Upon weighing the evidence, a jury of plaintiff's peers will decide the outcome.

### V. Plaintiff's Intentional and/or Negligent Infliction of Emotional Distress Claim

Count II of plaintiff's complaint charges defendant with "Intentional Infliction and/or Negligent Infliction of Emotional Distress." Complaint, ¶ 17.

The defendant, in his motion for summary judgment challenged plaintiff's claim for intentional infliction of emotional distress, stating that he can not prove the level of outrageous behavior necessary to meet his burden for this claim. Defendant's brief in support of motion for summary judgment at 11 [docket no. 19]. In his response, plaintiff conceded his intentional infliction of emotional distress claim. Plaintiff stated, "it is arguable that Mr. Bennett's actions would not meet the extreme or outrageous requirement. As such, the plaintiff concedes this claim." Plaintiff's response brief at 6 [docket no. 22].

Neither party has addressed plaintiff's claim of negligent infliction of emotional distress. The law in Mississippi regarding claims of workplace injury based on negligence is well settled. Claims based on negligence are barred by the exclusivity provision of the Mississippi Workers' Compensation statutes, Miss. Code Ann. § 71-3-1.[7] *See Griffin v. Futorian Corp.*, 533 So.2d 461 (Miss. 1988). To avoid the Workers'

---

[7] Miss. Code Ann. § 71-3-9 states:

13

Compensation exclusivity provision, the injury must satisfy two elements: 1) it "must be caused by the willful act of the employer or another employee acting in the course of employment and in the furtherance of the employer's business;" and 2) it "must be one that is not compensable under the Act." *Blailock v. O'Bannon*, 795 So.2d 533, 535 (Miss. 2001). The Mississippi Supreme Court has held that the employer must have an "actual intent to injure" to escape coverage by Workers' Compensation, "[r]eckless or grossly negligent conduct is not enough." *Id.* This court finds that plaintiff's claim of negligent infliction of emotional distress is barred by the Mississippi Workers' Compensation exclusivity provision. See Miss. Code Ann. § 71-3-1.

## VI. Conclusion

Defendant's motion for summary judgment is denied in part and granted in part [docket # 18]. The court denies defendant's motion, except as to its challenge to plaintiff's claims of intentional infliction and negligent infliction of emotional distress.

---

Employer liability exclusive

The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

This lawsuit shall be tried on February 21, 2012.  The pretrial conference is set for January 11 or 12, 2012.

**SO ORDERED, this the 29th day of September, 2011.**


**s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE**


Civil Action No. 3:09-cv-75 HTW-LRA
Memorandum Opinion and Order